# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs January 27, 2004

## STATE OF TENNESSEE v. TROY D. BILLINGSLEY

**Direct Appeal from the Circuit Court for Moore County**
**Nos. 926 & 933   Charles Lee, Judge**

---

**No. M2003-01410-CCA-R3-CD - Filed March 4, 2004**

---

The Defendant, Troy D. Billingsley, pled guilty to Driving After Being Declared an Habitual Motor Vehicle Offender, Felony Driving Under the Influence of an Intoxicant ("DUI") and Failure to Appear in the Circuit Court for Moore County.  After a sentencing hearing, the trial court imposed an aggregate sentence of fifteen years in prison.  On appeal, the Defendant contends that his sentence was excessive and contrary to law.  Finding no reversible error, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ALAN E. GLENN, J., joined.

Andrew Jackson Dearing, III, Shelbyville, Tennessee, for the appellant, Troy D. Billingsley.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Helena Walton Yarbrough, Assistant Attorney General; W. Michael McCown, District Attorney General; and Robert Crigler, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

In case number 926, the Moore County Grand Jury indicted the Defendant on charges of: (1) driving a motor vehicle and/or being in physical control of a motor vehicle after being declared an habitual  offender; (2) felony DUI; (3) driving on a revoked or suspended license; (4) violation of the implied consent law by refusing to submit to a breathalyzer test; and (5) violating the open container law by possessing an open container of an alcoholic beverage or beer while operating a motor vehicle.  A trial was set for January 10, 2003, and the Defendant failed to appear for the trial.  In case number 933, the Defendant was indicted by the Moore County Grand Jury for his failure to appear.  Subsequently, the Defendant pled guilty to three offenses: driving a motor vehicle after being declared an habitual offender; felony DUI; and failure to appear.  The other charges against

him were dismissed. After a sentencing hearing, the trial court sentenced the Defendant to five years for each offense and ordered that the sentences run consecutively, for an aggregate sentence of fifteen years. The Defendant appeals, contending that the sentence imposed upon him is excessive and contrary to law.

At the guilty plea hearing, the State asserted that:

The State's proof would show that in December . . . 2000 . . . the defendant was declared an Habitual Traffic Offender in the Circuit Court for Rutherford county, Tennessee and ordered not to drive for a minimum of three years. . . . [W]ithin a three year period [the DUI] offense occurred . . . [on] July 19th 2002. And what the State's proof would show is that a Mr. Tucker who lives close to where the defendant was caught on Chestnut Ridge, got a call from a relative who heard on a scanner that some passing motorist had seen the defendant in a disabled vehicle on the side of the road where Chestnut Ridge Church of Christ is . . . . Mr. Tucker . . . went out to see if he could assist this car that was partly on the road.

He saw the car and was a little le[ery] of pulling up because the defendant was passed out at the steering wheel. Deputy Rainey from the sheriff's department arrived about that time. The two of them approached that car and after a few minutes Deputy Rainey was able to rouse the defendant. He refused . . . to take any test, field sobriety test or take a blood alcohol test.

He did make a statement that he had been driving and hit a guard rail up the road. They did see the scrape on the side of the car. It was pretty obvious that he had hit a guard rail and pulled over there and passed out at the steering wheel.

As to the failure to appear charge, the State asserted:

[T]he felony DUI, and the Habitual Traffic Offender case, were set for trial on January 10th of this year. . . . The jury was there and everybody was there for the trial and the defendant did not appear. . . . His father appeared and was questioned and . . . [said] that the defendant had willingly not shown up for court.

At the sentencing hearing, the State offered a pre-sentence report that proved, among other things, that the Defendant was declared an habitual motor vehicle offender on December 11, 2000. Mark Logan, the Sheriff of Moore County, testified that DUIs are a problem in Moore County and that they have increased during his sixteen years as sheriff. The Sheriff also testified that the offenses of failure to appear and driving after being declared an Habitual Motor Vehicle Offender are problems in the county. Sheriff Logan offered the opinion that incarceration would be a factor in deterring others from committing those offenses. The parties agreed that the Defendant was to be sentenced as a persistent offender since he had been convicted of five prior felonies. The Defendant requested that he be sentenced to four years, the minimum, for each of the three

-2-

convictions to which he pled guilty and requested that his sentence for Driving After Being Declared a Habitual Motor Vehicle Offender run concurrently with his sentence for Felony DUI. The Defendant conceded that his sentence for Failure to Appear should run consecutively to the sentences for the other two felonies.

In response to the Defendant's assertion that two mitigating factors applied, the trial court stated:

> Now [the defendant] argues the Court should apply mitigating factor number 1 since this is . . . a physical control case. . . . [T]here is no evidence in the record that the defendant was not under the influence when he drove off of the road where he was found by the officer. . . . [T]hat being the case, the Court is not going to apply the mitigating factor [one] . . . . [T]he circumstances of driving under the influence or operating an automobile under the influence does not lend itself to the Court applying mitigating factor number 1.
>
> With regard to the so-called catch-all [mitigating factor] as to whether the Court should consider . . . [that the defendant] entered a plea of guilty [and] has accepted . . . guilt and responsibility for [his] actions . . ., [which] is a factor of mitigation that the Court can consider, . . . the State argues, and the record bears out that this defendant did not initially enter a plea of guilty. . . . He had his case set for trial. The jury assembled in the courtroom ready to try his case when he failed to appear, which gave rise to the second charge in this matter. . . . The Court recalls that the defendant's father was here that morning, explained that he had spoken with his son, who said if I go down there they are going to put me in jail for a long time. . . . That certainly is not accepting responsibility. It was only after the defendant was apprehended and was no longer able to make the bail that the Court had set upon him after the failure to appear that he decided to enter his plea of guilty. . . . In this case [the defendant] had no choice after having been arrested, after failing to appear and having his case set, to accept responsibility. . . . He was either going to accept responsibility or based upon what the Court heard from the facts, the State was prepared to prove, he would either accept responsibility or the jury would require him to accept that responsibility. . . . So the Court does not believe in the facts and circumstances of this case that certainly [the defendant] should receive any mitigation for accepting any responsibility in the matter.

The trial court found that three enhancement factors applied. First, the trial court found that the Defendant had a "history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range." See Tenn. Code Ann. § 40-35-114(2) (2003). Second, the trial court found that the Defendant had a previous history of unwillingness to comply with the conditions of a sentence involving release into the community, stating "the defendant [has] a history that is replete with failure to abide by terms and conditions of release into the community." See Tenn. Code Ann. § 40-35-114(9). Third, the trial court found that "the defendant had no hesitation

about committing an offense where the risk to human life was high," and stated that it based that decision, in part, upon the fact that this was the Defendant's third felony conviction for driving under the influence. See Tenn. Code Ann. § 40-35-114(11).

The trial court next determined that the Defendant's sentences should run consecutively for two reasons:

> One, obviously the defendant has a history of criminal activity which is more than extensive. It is abominable. The Court finds the defendant is a dangerous offender. . . . The Court has found that the defendant has no hesitancy about committing an offense where the risk to human life is high, which is the definition of dangerous offender. And given the fact that past efforts to deter the defendant from his activity have proved sorely unsuccessful that any sentence that the Court metes out is reasonably related to the need to protect society.

See Tenn. Code Ann. § 40-35-115(b)(2), (4) (2003). The court sentenced the Defendant to five years for each of the offenses and ordered that the sentences run consecutively for an effective sentence of fifteen years. It is from that order that the Defendant now appeals.

## II. Analysis
### A. Application of Enhancement Factors

The Defendant first argues that the weight given by the trial court to the three enhancement factors does not comply with the purposes of the sentencing act. When a defendant challenges the length and manner of service of a sentence, it is the duty of this court to conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "'conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" State v. Ross, 49 S.W.3d 833, 847 (Tenn. 2001) (quoting State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999)); see also State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court that are predicated upon uncontroverted facts. State v. Dean, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994). In conducting a de novo review of a sentence, we must consider: (a) any evidence received at the trial and/or sentencing hearing; (b) the pre-sentence report; (c) the principles of sentencing; (d) the arguments of counsel relative to sentencing alternatives; (e) the nature and characteristics of the offense; (f) any mitigating or enhancement factors; (g) any statements made by the defendant on his or her own behalf; and (h) the defendant's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-210 (2003); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging a sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2003),

-4-

Sentencing Commission Cmts.

Tennessee Code Annotated section 40-35-103(1) (2003) states that:

Sentences involving confinement should be based on the following considerations:
(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

Additionally, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103(5). The trial court may consider enhancement and mitigating factors when determining a defendant's sentence. See Tenn. Code Ann. §§ 40-35-113, -114.

The trial court sentenced the Defendant to five years for each of his three felony convictions, which is one year more than the minimum allowable sentence. The record provides ample support for the trial court's rejection of any mitigating factors and its application of three enhancement factors and, in fact, the Defendant does not contend that the trial court erred in this regard. Rather, the Defendant contends that his sentences do not comply with the purposes of the sentencing act. We find that the trial court in this case considered all relevant evidence and so stated on the record; its decision, therefore, is entitled to a presumption of correctness. See Ross, 49 S.W.3d at 847. Further, we conclude that the Defendant has not met his burden of establishing that the trial court erred, or failed to comply with the principles of the sentencing act, when sentencing the Defendant.

### B. Consecutive Sentencing

The Defendant next contends that the trial court erred when it ordered that his sentences run consecutively. A trial court may order sentences to run consecutively if a defendant is convicted of more than one criminal offense and it finds, by a preponderance of the evidence, that one or more of several criteria are met as set forth in Tennessee Code Annotated section 40-35-115. State v. Kern, 909 S.W.2d 5, 8 (Tenn. Crim. App. 1993). That Code section states:

(b) The court may order sentences to run consecutively if the court finds by a preponderance of the evidence that: . . . (2) The defendant is an offender whose record of criminal activity is extensive; . . . (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high . . . .

Tenn. Code Ann. § 40-35-115(b)(2), (4). In addition to the specific criteria in Tennessee Code Annotated section 40-35-115(b), consecutive sentencing is guided by the general sentencing principles providing that the length of a sentence be "justly deserved in relation to the seriousness of the offense" and "no greater than that deserved for the offense committed." Tenn. Code Ann. §§ 40-35-102(1) and -103(2); State v. Imfeld, 70 S.W.3d 698, 707 (Tenn. 2002).

In Kern, this Court held that, for a defendant to qualify as a dangerous offender, the record must establish that:

> (1) the defendant's behavior indicates little or no regard for human life and he did not hesitate in committing a crime in which the risk to human life is high; (2) the circumstances surrounding the commission of the offense are aggravated; (3) confinement for an extended period of time is necessary to protect society from the defendant's unwillingness to lead a productive life and his resort to criminal activity and furtherance of his anti-societal lifestyle; and (4) the aggregate length of the sentences reasonably relates to the offenses for which the defendant stands convicted.

Kern, 909 S.W.2d at 8 (citing State v. Woods, 814 S.W.2d 378, 380 (Tenn. Crim. App. 1991)); see State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995); Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976).

On appeal, the Defendant challenges the imposition of consecutive sentencing. After thoroughly reviewing the evidence presented at the sentencing hearing, we conclude that the trial court properly sentenced the Defendant to consecutive sentences based upon the fact that the Defendant's history of criminal activity is extensive and because the Defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high. First, the record indicates that this is the Defendant's third felony DUI conviction, based upon twelve previous DUI convictions, and that he has additionally been declared a Habitual Motor Vehicle Offender. Furthermore, the Defendant has been convicted three times for public intoxication, ten times for driving on a revoked license, once for having contraband in a penal facility, five times for misdemeanor failure to appear, once for burglary, once for drug possession, once for making false reports and twice for aggravated assault. Accordingly, we conclude that the trial court did not err when it ordered that the sentences be served consecutively based upon its determination that the Defendant's criminal history was extensive.

Additionally, we find that the trial court properly sentenced the Defendant to consecutive sentences based upon its finding that the Defendant was a dangerous offender. As the trial court noted, the Defendant has twelve prior DUI convictions and past efforts to deter the Defendant from this activity have proved unsuccessful. This is an adequate foundation for finding that the Defendant is a dangerous offender. See Imfeld, 70 S.W.3d at 708. Accordingly, we conclude that the trial court properly imposed consecutive sentencing in this case.

### III. Conclusion

In accordance with the foregoing, we conclude that the trial court committed no reversible error.  Therefore, the judgments of the trial court are AFFIRMED.

_____
ROBERT W. WEDEMEYER, JUDGE